1

2

3

4

5

6                            IN THE UNITED STATES DISTRICT COURT

7

8                           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,                         No. CR 16-0251 WHA

11             Plaintiff,

12      v.                                             **ORDER DENYING MOTION
                                                       TO SUPPRESS FRUITS OF
13   LAMAR JOHNSON,                                    WARRANT SEARCH**

14             Defendant.

15   _____/

16                                   **INTRODUCTION**

17         In this criminal action, defendant is charged with various drug offenses.  Defendant

18   moves to suppress the fruits of a warrant search.  For the reasons stated below, the motion as to

19   the warrant search is **DENIED**.

20                                      **STATEMENT**

21         On March 16, a judge in San Mateo Superior Court issued a warrant to search defendant

22   Lamar Johnson, a vehicle allegedly belonging to Johnson, and a residence in East Palo Alto also

23   allegedly belonging to Johnson.  The affidavit offered in support of the warrant alleged that

24   within thirty days prior to seeking the warrant, two police officers met with a confidential

25   informant, who stated that he could purchase cocaine base from a black man named "Lamar"

26   who sold the drugs from his vehicle.  The confidential informant provided a phone number for

27   "Lamar," but the officers' records check named no registrant for that phone (Amram Decl., Exh.

28   B at *23).

**United States District Court**
For the Northern District of California

The affidavit detailed two controlled purchases of cocaine base executed by the confidential informant under the supervision of the Menlo Park Police Department.  The confidential informant placed calls to the cell phone number provided, and met the person who answered at a predetermined location.  The officers observed the confidential informant and a second person arrive at the location, engage in casual conversation while the second person sat in his van, and exchange items through the window.  The confidential informant identified the second person as "Lamar" and provided officers with cocaine base he purchased from "Lamar" (*id.* at *24–25)

Detective Christopher Sample, the affiant, weighed the cocaine base and found it to be a usable amount based on his training and experience, and performed a presumptive test to confirm it was cocaine.  Detective Sample and another officer surveilled the van used during the first controlled purchase.  When the driver stopped to converse with a pedestrian, impeding the flow of traffic, the officers pulled him over, and requested his drivers license.  The second officer identified the driver as "Lamar" from the controlled buy.  His drivers license identified him as Lamar Megale Johnson (*id.* at *26–27)

A records check revealed that the traffic stop had occurred in front of Johnson's own home, which Johnson confirmed.  The officers issued a warning and drove away, though Detective Sample observed Johnson enter the home (*id.* at *27).

Ten days later, Detective Sample and two others oversaw a second controlled buy, which proceeded in the same manner as the first, again exchanging cash for a usable quantity of cocaine.  The officers observed Johnson drive to the same address at which the traffic stop occurred, where he walked in the front door and parked his van in the driveway (*id.* at *29).

The affidavit noted that the confidential informant was a paid informant, that he had never given Detective Sample false information, that he correctly described the type of drug involved, the location of the transaction, and the individuals involved, and that the money involved corresponded with the quantity bought (*id.* at *30).  (The affidavit never mentioned the quantity, and expressly requested to keep that figure confidential to avoid disclosing the identity of the confidential informant.)

Detective Sample also averred that his training and experience informed him that sellers of cocaine base often purchased it in bulk quantity and divided up, often in their own homes, and that they kept other contraband on their person or in their homes.  Based on that affidavit, the judge in San Mateo Superior Court granted a search warrant authorizing a search of Lamar Johnson, the van he used, and the residence he entered (*id.* at *31, *34).

The search, executed on March 21, 2016, recovered, a firearm, ammunition, scales, plastic bags, pills in bottles, and cocaine base (*id.*, Exh. D).  Johnson now moves to suppress the fruits of that search.   In the same motion, Johnson also moved to suppress the fruits of an earlier warrantless search.  All agree that the two searches are unrelated and that the facts concerning the warrant search are not in dispute.  A separate order will address the warrantless search.  This order follows full briefing and oral argument.

## ANALYSIS

Johnson moves to suppress the evidence obtained during warrant search of his home on three bases.  *First*, he argues that the affidavit did not support the inference that Johnson kept cocain base or other contraband in his home, *second*, that the affidavit lacked sufficient facts about the confidential informant's credibility, and *third*, that the affidavit omitted information about the quantity purchased during the controlled buys.  Johnson's arguments go solely to the adequacy of the affidavit offered to obtain the warrant.  He does not make a *Franks* challenge.  This order rejects each argument.

When deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The duty of the reviewing court is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  *Id.* 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960).

**United States District Court**
For the Northern District of California

3

The issuing judge may draw reasonable inferences about where the evidence is likely to be found. *United States v. Fernandez*, 388 F.3d 1199, 1253 (9th Cir. 2004). In *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990), our court of appeals noted that "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found," including knowledge that drug traffickers kept contraband in their homes or adjoining structures, as support for probable cause to support a search of a resident. Indeed our court of appeals expressly held a magistrate could draw the reasonable inference that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

"[A] magistrate need not determine that the evidence sought is *in fact* on the premises to be searched . . . ." *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985) (emphasis in original). Rather, "only a reasonable nexus between the activities supporting probable cause and the locations to be searched" need be offered. *United States. v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991).

Johnson argues there was no substantial basis for the magistrate judge to find probable cause to search his *home* for contraband, inasmuch as all of the controlled purchases occurred from his van. Not so. As stated, our court of appeals has held that a magistrate may draw the inference that a drug trafficker keeps contraband in his home. Here, although Johnson tends to sell from his van, rather than from his home, the fact that Johnson left his van and entered his home soon after completing a sale (the controlled sale observed here) provides a reasonable nexus between his home and his drug sales, particularly when informed by Detective Sample's statement that drug dealers often kept some inventory in their homes.

Johnson cites *United States v. Carter*, 64 Fed. Appx. 109, 112 (10th Cir. 2003). There, a search warrant authorized the search of premises other than the defendant's residence, albeit related to the defendant, based on the affiant's knowledge and expertise that drug traffickers often kept their drugs in stash houses (as opposed to their primary homes). The Tenth Circuit affirmed the district court's finding that the warrant was *supported* by probable cause. Johnson contends *Carter* is at odds with Detective Sample's statement that dealers tend to keep

inventory in their homes, but those conclusions are not mutually exclusive.  Moreover, there is no requirement that the affidavit show "that the evidence is more likely than not to be found where the search takes place."  *Peacock*, 761 F.2d at 1315.  Here, where our affiant observed Johnson return to his home after the controlled buys without stopping at a different location first constitutes a substantial basis for finding probable cause to search his home.  Thus, *Carter* supports the government's case.

Johnson also contends the affidavit lacked any indication of the reliability of the confidential informant.  Although Detective Sample's description of the confidential informant was sparse (for example, the fact that the confidential informant had not provided false information begged the question of how much inside information he had provided in the first place), he laid out several facts that corroborated the informant's story, based on external factors.  That is, the veracity of the informant's information bore itself out during the controlled buys and subsequent surveillance:  The confidential informant did, in fact, purchase cocaine base from a person named Lamar, and the quantities corresponded to the amount of money paid.

Finally, Johnson contends the omission of the actual quantity of cocaine base purchased undermined a finding probable cause, inasmuch as the quantity sold was a single small rock. This, Johnson contends, calls into question the applicability of Detective Sample's experience and training concerning the common practices of drug traffickers, because it indicates he was just a small-time dealer unlikely to maintain the bulk inventory or other paraphernalia affied to.

But Johnson ignores the fact that Detective Sample never limited his assertion of the likelihood that a drug dealer kept more drugs and other contraband in his home to large-scale dealers.  Moreover, the repeated transactions, which occurred within a period of thirty days, no matter the quantity sold at either transaction, still provided a substantial basis for the inference that Johnson was involved in drug dealing on an ongoing basis.

This order finds that the San Mateo Superior Court judge had a substantial basis for concluding that the search warrant was supported by probable cause.

United States District Court

For the Northern District of California

5

**CONCLUSION**

For the reasons stated above, Johnson's motion to suppress the fruits of the warrant search of his residence is **DENIED**. A separate order will address the motion to suppress the unrelated search of his person and subsequent search of his vehicle at a traffic stop.

**IT IS SO ORDERED.**

Dated:   December 20, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6