IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 16-0251 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO SUPPRESS FRUITS OF WARRANTLESS SEARCH** |
| LAMAR JOHNSON, | |
| Defendant. | |

## INTRODUCTION

In this criminal action, defendant is charged with being a felon in possession of body armor among other offenses. Defendant moves to suppress the fruits of a warrantless search of his person and subsequent search of his vehicle. For the reasons stated below, defendant's motion is **DENIED**.

## FINDINGS OF FACT

At 10:18 a.m. on August 7, 2015, Sergeant Clint Simmont of the East Palo Alto Police department stopped a black BMW sedan for failing to stop at a stop sign before making a turn. The driver of that vehicle was defendant Lamar Johnson, and there were no other occupants.

When Sergeant Simmont approached the driver's side of the vehicle and began speaking to Johnson, he smelled "a combination of both burnt and fresh" marijuana, to which he had "a great deal of exposure" through his work on patrol in East Palo Alto and as a special agent with the San Mateo County Narcotics Task Force (Tr. at 6, 13). Johnson provided his driver's license to Sergeant Simmont, and Sergeant Simmont radioed in Johnson's information.

1    Via his computer-aided dispatch system ("CAD"), Sergeant Simmont learned that
2 Johnson had a suspended driver's license with "service needed" (Simmont Decl. ¶ 6). In his
3 experience, the California Department of Motor vehicles sent mailed notices to individuals with
4 suspended licenses prior to the effective suspension of that date, and that the suspension "with
5 service needed" meant that Johnson had not been "formally advised by a police officer or in
6 court that his license had been suspended," though Sergeant Simmont still assumed the DMV
7 had mailed the notice, such that the suspension was effective (Tr. at 20–25).

8    Sergeant Simmont asked Johnson for the registration and insurance for the vehicle, to
9 which Johnson responded that he was borrowing the car from his uncle and that his uncle had
10 removed that information from the car. Sergeant Simmont asked Johnson if he was certain of
11 that, and Johnson opened the glove box of the vehicle as if to check for the documentation.
12 Sergeant Simmont observed two empty plastic bags and pill bottles in the glove box. He also
13 observed that Johnson "moved his hand around on the few items that were in there, but he
14 didn't actually manipulate any items that were in there, and then he quickly closed the glove
15 box door" (Tr. at 22). Because this movement was inconsistent with the way someone would
16 genuinely search for paperwork, Sergeant Simmont correctly found this "unusual" (Simmont
17 Decl., ¶ 7). Sergeant Simmont also learned from dispatch that Johnson had been arrested for
18 parole violations, which indicated to Sergeant Simmont that Johnson had previously been
19 convicted of a felony (Tr. at 36).

20   Sergeant Simmont then asked Johnson to step out of the vehicle, and he conducted a
21 search of Johnson's person. During this search, Sergeant Simmont discovered that Johnson was
22 wearing a bullet-proof vest and that he was carrying approximately $650 in cash. Sergeant
23 Simmont detained Johnson and sought confirmation of his felony record from dispatch. Once
24 dispatch confirmed Johnson's felony record, Sergeants Simmont placed him under arrest and
25 put him in the back of the patrol car (Tr. at 34–37).

26   Sergeant Simmont considered Johnson under arrest for charges related to being a felon
27 in possession of body armor (Simmont Decl. ¶ 9). Specifically, he testified as follows (and this
28 order finds as true) (Tr. at 39):

2

Q [by counsel for Johnson]: Okay. All right, so you did not arrest Mr. Johnson for driving on the suspended license.

A [by Sergeant Simmont]: No, he wasn't charged with that.

Q: And you did not arrest him for the odor of marijuana that you smelled when you pulled him over.

A: No.

The Court: What did you arrest him for?

The Witness: Initially for being a felon in possession of body armor.

Sergeant Simmont, along with two back-up units that had arrived, prepared to have Johnson's vehicle towed. As part of that procedure, they searched the vehicle and discovered a loaded handgun, a holster, a pill bottle containing 325mg acetaminophen/5mg hydrocodone pills, plastic bags, scales, and a syringe of concentrated cannabis (Simmont Decl. ¶ 9). One of the back-up units filled out a form memorializing the property within the vehicle.

Back at the station, Sergreant Simmont conducted a second search of Johnson's person. In that search, Sergeant Simmont found cocaine base, suspected heroin, marijuana, and oxycodone hydrochloride pills hidden in a rolled up portion of Johnson's pants. Sergeant Simmont read Johnson his *Miranda* rights and conducted an interview (Simmont Decl. ¶ 10).

\*          \*          \*

Johnson now moves to suppress the fruits of the warrantless searches of his person and his vehicle as well as the fruits of an unrelated warrant search of his home. Both issues have been fully briefed and argued at a hearing. The warrant search is addressed in a separate order. Because certain facts appeared disputed relating to the warrantless search, an evidentiary hearing was held at which Sergeant Simmont testified. The parties submitted supplemental briefs following the evidentiary hearing and oral argument was again heard on the warrantless search.

## ANALYSIS

A warrantless search of a person is permissible under the Fourth Amendment if the search is incident to an arrest. Here, all agree that the initial traffic stop was valid. The critical question here is whether Sergeant Simmont's search of Johnson's person was a valid search

1 incident to the arrest that occurred after the search. *United States v. Hartz*, 458 F.3d 1011, 1019
2 (9th Cir. 2006).

3 The government contends that because Sergeant Simmont had probable cause to arrest
4 Johnson for marijuana-related crimes and for driving with a suspended license *prior to* the
5 search, the search was valid, even though Sergeant Simmont subjectively stated he had arrested
6 Johnson for being a felon in possession body armor (which had been discovered during the
7 search). Johnson argues that the pre-search circumstances did not provide probable cause to
8 arrest. He further argues that even if there was probable cause to arrest, that cannot serve as a
9 basis for the subsequent search incident to arrest in these circumstances. This order addresses
10 each issue in turn.

11 **1.   PROBABLE CAUSE TO ARREST.**

12 "A police officer has probable cause to arrest a suspect without a warrant if the available
13 facts suggest a 'fair probability' that the suspect has committed a crime." *Hartz*, 458 F.3d at
14 1018. "The analysis involves both facts and law. The facts are those that were known to the
15 [arresting officers] at the time of the arrest. The law is the criminal statute to which those facts
16 apply." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1077 (9th Cir. 2011).

17 The government contends that the facts before Sergeant Simmont gave rise to a fair
18 probability that Johnson was committing various drug-related crimes and that he was driving
19 with a suspended license, and that either circumstance gave Sergeant Simmont probable cause
20 to arrest Johnson.

21 **A.   Drug Crimes.**

22 At the time of Johnson's arrest, Sections 11357, 11359, and 11360 of the California
23 Health and Safety Code prohibited the possession, sale, and transportation of marijuana for use
24 in committing a crime (although the mere possession of less than 28.5 grams of marijuana
25 constituted only an infraction not punishable by imprisonment).

26 Johnson contends that the facts known to Sergeant Simmont prior to searching
27 Johnson's person did not suggest a fair probability that Johnson had committed a drug-related
28 crime. He contends that the odor of marijuana alone was not sufficient support for probable

4

1    cause to arrest. Not so. Our court of appeals has stated "the fact that an agent familiar with the
2    odor of marijuana smelled such an odor emanating from the automobile when he jumped in to
3    stop it alone was sufficient to constitute probable cause for a subsequent search for marijuana."
4    *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973). The same conclusion applied in
5    *United States v. Parker*, 919 F. Supp. 2d 1072, 1080 (E.D. Cal. 2013) (Judge Michael J. Seng),
6    also cited by Johnson, which decision cited *Barron*.

7        Johnson contends that *Barron* and *Parker* are distinguishable because both concerned
8    more egregious pre-search facts than those of our case. Specifically, in *Barron*, the driver fled
9    and tried to hide from the police and two officers smelled "a very strong smell of marijuana."
10   In *Parker*, an officer also smelled "the distinct and very strong odor of green marijuana
11   emanating from the inside of the passenger compartment" immediately once it was opened and
12   the defendant failed to explain that odor when asked. Here, on the other hand, only one officer
13   smelled the odor of fresh and burnt marijuana. But both *Barron* and *Parker* went out of their
14   way to emphasize that the odor of marijuana would have been enough on its own, so the
15   distinctions are immaterial.

16       The circumstances supporting probable cause here exceeded the odor of marijuana.
17   *First*, Johnson was the only occupant of the vehicle, so Sergeant Simmont could have fairly
18   attributed the odor to Johnson's activities (as opposed to some other occupant). *Cf. Vago v.*
19   *County of Los Angeles*, No. 13-00868, 2015 WL 10945575, at *5 (C.D. Cal. July 10, 2015)
20   (Judge Dolly M. Gee) (stating in dictum that an officer lacked probable cause to arrest any of
21   multiple occupants of a vehicle based on the odor of marijuana). *Second*, Sergeant Simmont
22   observed Johnson graze his hands over the contents of the glove box without manipulating the
23   objects therein to search for the registration and insurance documents, which Sergeant Simmont
24   found unusual and which raised a fair probability that Johnson was avoiding revealing
25   contraband in the glove box (a suspicion that later proved correct when a gun was discovered
26   there). *Third*, Sergeant Simmont observed pill bottles and plastic bags in the glove box.
27   Although carrying pill bottles and plastic bags are not illegal on their own, their presence
28

1    contributed to the totality of the circumstances giving rise to the fair probability that Johnson
2    was transporting marijuana for sale.

3    An additional distinction between our case and *Barron* and *Parker* is worth addressing.
4    Our case concerns probable cause to arrest, not probable cause to justify a search under the
5    vehicle exception (as in *Barron* and *Parker*).  The vehicle exception requires "probable cause to
6    believe that the car had evidence of criminal activity." *United States v. Camou*, 773 F.3d 932,
7    943 (9th Cir. 2014).  Nevertheless, given that Johnson was the only occupant in the vehicle and
8    that he himself behaved unusually when "searching" for the registration and insurance
9    information, this order finds the same facts support both probable cause that the vehicle
10   contained evidence of contraband *and* probable cause to search Johnson's vehicle incident to
11   his arrest.

12   Johnson contends that Sergeant Simmont's failure to ask whether Johnson carried a
13   medical marijuana card undermined any finding of probable cause.  But Johnson cites no
14   authority for the proposition that Sergeant Simmont had an obligation to affirmatively seek out
15   that information, rather than merely take it into account if furnished.  (Nor has Johnson
16   proffered any evidence that he, in fact, possessed a medical marijuana card.)

17   Johnson cites *Lingo v. City of Salem*, __ F.3d __, 2016 WL 4183128, at *6 (9th Cir. June
18   27, 2017), as a decision in which knowledge that the defendant did *not* have a medical
19   marijuana card supported probable cause, but that decision did not find that factor *necessary* to
20   its finding of probable cause.  The only other authority Johnson cites on this point is *United*
21   *States v. Phillips*, 9 F. Supp. 3d 1130, 1138 (E.D. Cal. 2014) (Chief Judge Morrison C. England,
22   Jr.).  That decision held that "when officers become aware that a suspect has a medical
23   marijuana card, the officers must take that information into account when determining whether
24   there is probable cause to conduct a warrantless search or arrest that individual." *Phillips* found
25   no authority for a rule that such inquiry must be made *initially*.  So too here.

26   Johnson also argues that he would not have been subject to a custodial arrest based on
27   the probable cause available to Sergeant Simmont prior to the search because, he argues,
28   Sergeant Simmont lacked a factual basis for concluding that the quantity of marijuana in

6

1  Johnson's possession exceeded 28.5 grams, below which possession or transportation would
2  constitute only an infraction. (Indeed, the amount in his possession was less than 28.5 grams.)
3  or that Johnson intended to distribute the marijuana he possessed. Similarly, Johnson contends
4  Sergeant Simmont lacked a probable cause to find he had the specific intent to distribute
5  marijuana.

6  Johnson is correct that Sergeant Simmont had no basis to assess whether the quantity of
7  marijuana in Johnson's possession exceeded 28.5 grams. Again, even if a custodial arrest
8  would have been improper under state law once all of the facts were known, that does not affect
9  the constitutional question of whether Sergeant Simmont had probable cause to arrest Johnson
10 at the time of the search. (Again, he *did* arrest Johnson, albeit for a superseding purpose.)

11 Johnson is incorrect, however, that Sergeant Simmont lacked probable cause as to his
12 specific intent. Johnson again ignores the fact that Sergeant Simmont observed more than just
13 the smell of marijuana. He also observed Johnson's unusual behavior in feigning a search
14 through the glove box, which contained empty pill bottles and plastic bags. Those facts indicate
15 a fair probability that Johnson kept marijuana that he intended to distribute (via the containers)
16 in the glove box. That was enough.

17 This order finds that Sergeant Simmont's observation of the smell of fresh and burnt
18 marijuana, Johnson's unusual "search" for the insurance and registration documents, the
19 presence of pill bottles and plastic bags together established a fair probability that Johnson
20 possessed more than 28.5 grams of marijuana, possessed it for sale, or was transporting it for
21 use in a crime.

22 **B.   Suspended License.**

23 Section 14601(a) of the California Vehicle Code prohibits driving with a suspended
24 license if the driver knows of the suspension, with knowledge presumed "if mailed notice has
25 been given by the department . . . ."    Section 14602.6(a)(1) authorizes the immediate
26 arrest of a person driving a vehicle "while his or her driving privilege was suspended or
27 revoked."

28

7

Johnson contends that because Sergeant Simmont had been informed that Johnson's license had been suspended "with service needed," Sergeant Simmont did not have probable cause to arrest Johnson on that offense. Again, not so. As Sergeant Simmont testified, he understood that service was necessary because there was no affirmative proof that Johnson had actually received notice of his suspension. Sergeant Simmont understood, as a reasonable officer would given the circumstances, that the DMV had already mailed notice to Johnson. Thus, there was a fair probability that Johnson had notice that his license had been suspended and thus could be arrested for that offense.

Johnson submits his DMV records, purportedly demonstrating that his license was *not* suspended at the time of the stop (although that record was not before Sergeant Simmont at the time) (Amram Reply Decl., Exh. B). But that fact never came before Sergeant Simmont prior to the arrest, so it has no bearing on whether probable cause existed.

Johnson further argues that department policy directed Sergeant Simmont to verify the alleged suspension with records personnel before arresting Johnson (Amram Reply Decl., Exh. A). The question before the Court is not whether Johnson's arrest violated local or California law, but rather whether the fruits of that arrest should be suppressed as violative of Johnson's Fourth Amendment rights. Our court of appeals has held "that while States are free to regulate [arrests committed in the presence of an arresting officer] however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Whether or not Sergeant Simmont should have sought further clarification of the status of Johnson's driver's license prior to arresting him as a matter of department policy is of no consequence in addressing the constitutional question before us now.

This order finds the facts before Sergeant Simmont, namely, that Johnson was the only occupant of the vehicle, that the CAD informed him that Johnson's license had been suspended, and his understanding that the DMV would have already mailed Johnson a notice of his suspension established a fair probability that Johnson was driving with a suspended license. Thus, Sergeant Simmont had probable cause to arrest Johnson for that violation as well.

Having found probable cause to arrest existed, this order now turns to the question of whether that probable cause could justify the search of Johnson's person as a search incident to an arrest.

### 2. SEARCH INCIDENT TO ARREST.

As stated, the Fourth Amendment does not require a police officer to obtain a warrant to conduct a search incident to a valid arrest. *Hartz*, 458 F.3d at 1019. Moreover, a search incident to arrest need not follow the arrest. Rather, it need only be "roughly contemporaneous with the arrest," which turns on whether "the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former." *United States v. MacLaughlin*, 170 F.3d 889, 892–93 (9th Cir. 1999). "So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004)

Here, as stated, prior to the search, Sergeant Simmont had probable cause to arrest Johnson on two bases. The search occurred quickly after that probable cause arose, and the arrest occurred immediately after the search. The only purported "intervening act" was the discovery that Johnson was wearing body armor and carrying a large sum of cash — the fruits of the very search in question. Defendant argues, without citing any authority, that this discovery constitutes an intervening act negating the roughly-contemporaneous requirement. Defendant's interpretation would swallow the rule allowing certain searches to precede the arrest. That is, if the fruits of a search incident to an arrest could simply render the subsequent arrest unconstitutional, then it would be virtually impossible to conduct a valid search incident to an arrest prior to the arrest. This argument is unpersuasive.

Johnson comes closer by citing *Knowles v. Iowa*, 525 U.S. 113 (1998). There, the defendant was stopped for speeding, an offense for which Iowa law authorized officers to issue a citation or to arrest the offender. The officer conducting the traffic stop issued a citation to the defendant for speeding but then conducted a full search of the defendant's car, where he discovered a bag of marijuana and a pipe. The defendant was then arrested and charged with state-law drug crimes.

9

The defendant moved to suppress, arguing that the search therein was not a "search incident to arrest" but a "search incident to citation," and thus could not fall within the exception to the warrant requirement for searches incident to arrest. The Supreme Court agreed, noting that the exception for a search incident to an arrest is justified by "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," neither of which applied with any significance in a search incident to a citation after the citation had been issued. *Id.* at 116 (citations omitted). This was because an arrest exposes an officer to extended danger while taking a suspect into custody and transporting him to the station, while a citation presents minimal and brief exposure to any danger. Furthermore, once the officer issued the citation, the process of collecting evidence was complete. *Knowles* emphasized that the search in question was a "search incident to citation" not a "search incident to arrest," using the former term three times in just a six page decision.

Here, unlike in *Knowles*, the officer's role in addressing the initial violations giving rise to probable cause to arrest (drug crimes and driving with a suspended license) had *not* been resolved, such as with the issuance of a citation, by the time of the search. There remained the possibility that Sergeant Simmont would arrest Johnson, thereby exposing himself to greater danger if Johnson was armed and presenting the risk that Johnson would destroy evidence of the alleged crimes already discovered. *Knowles*, therefore, does not apply.

Johnson also cites *Menotti v. City of Seattle*, 409 F.3d 1113, 1153 (9th Cir. 2005), for the proposition that probable cause to arrest alone is not enough to support a search or seizure incident to arrest. There, a police officer seized a protestor's sign without a warrant for the seizure. Although the officer had probable cause to arrest the protestor for being present in a restricted zone, he never arrested the protestor. The officer invoked the exception to the warrant requirement for seizures incident to arrests, but our court of appeals rejected that defense because the officer did not arrest the protestor. That is not our case.

Here, there is no dispute that Sergeant Simmont *did* arrest Johnson. True, Sergeant Simmont subjectively understood the arrest to have been related to the crime of Johnson's possession of body armor, but unlike *Menotti* and *Knowles*, Sergeant Simmont never abandoned

10

the possibility of arresting Johnson based on the initial probable cause to arrest. He simply discovered a more pressing reason to arrest Johnson. Thus, *Menotti* is inapposite.

Johnson insists that we cannot allow this probable cause to support the search incident to arrest because Sergeant Simmont never decided to arrest Johnson for those violations but instead arrested Johnson "[i]nitially for being a felon in possession of body armor" (Tr. at 39). In *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), however, the Supreme Court ruled that an officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause."

In *Devenpeck*, a private civilian pulled off a road to assist a disabled automobile and its passengers, and activated flashing headlights, that gave the impression, combined with his statements, to the passengers that he was a police officer. A police officer pulled over to check on the motorists, and the civilian quickly drove away. The officer pursued the civilian and observed that he appeared to be impersonating a police officer. A back-up officer arrived on the scene and observed the civilian recording the conversations. The back-up officer arrested the civilian for violation of the Washington Privacy Act.

The Supreme Court held that although the Washington Privacy Act did not provide a valid basis to arrest the civilian, the arrest was nevertheless constitutionally valid, because information known to the officers would have supported probable cause to arrest for impersonating a law enforcement officer, even though none of the arresting officers subjectively believed that was the basis for the arrest. The Supreme Court determined that holding the officers to their subjective basis for an arrest would mean "that the constitutionality of an arrest under a given set of known facts will vary from place to place and from time to time." *Id.* at 154 (citations and internal quotation marks omitted). Thus, "[a]n arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not." *Ibid.* (emphasis in original). The Court held that the Fourth Amendment did not include such an "aribtrarily variable protection."

*Devenpeck* addressed the reasonableness of an arrest, not that of a search incident to an arrest, but the reasoning is easily extended. That is, *Devenpeck* means that Sergeant Simmont's arrest would have been valid even if his subjective justification for the arrest was not So too can Sergeant Simmont's search incident to the arrest be justified by the probable cause that existed prior to the search. To hold otherwise would invite precisely the arbitrary variability rejected in *Devenpeck*.

Johnson contends this application of *Devenpeck* cannot be squared with *Knowles*. (*Devenpeck* did not address *Knowles* at all.) He cites *M.D. ex rel. Daniels v. Smith*, 504 F. Supp. 2d 1238, 1244 (M.D. Ala. 2007) (Judge Myron H. Thompson), *aff'd*, 278 Fed. Appx. 987 (11th Cir. 2008) (unpublished), as support for limiting the expansion of *Devenpeck* to searches incident to arrest, but that decision does not caution against the particular extension of *Devenpeck* advanced by the government here. Rather, it addresses the limitation imposed by *Knowles* — there must be an arrest. It discussed *Devenpeck* as follows:

> The Supreme Court's decision in *Devenpeck* does not alter this conclusion. In *Devenpeck*, the Court held that the subjective intent for an arrest is irrelevant: Even if the stated basis for the arrest is flawed, the officer is excused if another basis, supported by probable cause, existed to arrest the suspect. The Court based its holding on the "arbitrary consequences" that would result from subjective inquiries. If two officers arrest a suspect on identical facts supporting probable cause, one arrest could be constitutional and the other unconstitutional if the latter officer failed to identify correctly "a general class of offense for which probable cause exists." While not directly on point, *Devenpeck* could be read to stand for the broad proposition that, as long as objective grounds exist to arrest a suspect, failure to do so actually is irrelevant.

*Id.* at 1244–45.

Judge Thompson rejected the government's proposed expansive reading of *Devenpeck* that would allow a search without an arrest. He acknowledged that *Devenpeck* had not overruled the requirement of *Knowles*, namely that a search incident to an arrest still requires an *arrest* (the same conclusion reached in *Menotti*). Again, our case is distinct because Sergeant Simmont *did* arrest Johnson. Johnson's interpretation would implicate the very concern about arbitrary results addressed in *Devenpeck* — a concern absent from *Daniels v. Smith*, *Knowles*, and *Menotti*.

12

1    Johnson cites *United States v. Donaldson*, 793 F.2d 498, 503 (2d Cir. 1986), for the
2 proposition that "care must be taken to avoid bootstrapping that allows the fruits of a search
3 incident to an arrest to provide the basis for the arrest," a concern echoed in *United States v.*
4 *Davis*, 111 F. Supp. 3d 323, 334 n.7 (E.D.N.Y. 2015) (Judge Margo J. Brodie).  Notably, both
5 decisions addressing this concern with "bootstrapping" actually denied motions to suppress;
6 they merely acknowledged the problem without finding it applicable.  This order acknowledges
7 that concern too, but also finds it inapplicable.  Here, as stated, Sergeant Simmont had probable
8 cause to arrest *prior to* conducting the search.  That he did not make the arrest until after a more
9 pressing cause to arrest later revealed itself does not constitute impermissible bootstrapping.
10 *Knowles* did not require that the arrest justifying the search

11    Counsel for Johnson asked Sergeant Simmont whether he *did* arrest Johnson for
12 marijuana-related crimes or for driving without a suspended license (to which Sergeant
13 Simmont responded that he did not, subjectively).  Notably, counsel did not ask Sergeant
14 Simmont whether he *would have* arrested Johnson for those violations, based solely on the facts
15 as he understood them before the search.  This order assumes, solely for the sake of argument,
16 that Sergeant Simmont would not have arrested Johnson under those circumstances alone.
17 Nevertheless, our inquiry is an objective one.  A reasonable officer could have observed a fair
18 probability that Johnson was committing those crimes, and could have arrested him
19 accordingly.  A custodial arrest did in fact occur, and Sergeant Simmont did not abandon the
20 possibility of arresting Simmont on those charges (such as by issuing a citation), so our
21 circumstances did not run afoul of *Knowles*.

22    The same probable cause that justified the search of Johnson's person also justified the
23 search of his vehicle.  Sergeant Simmont smelled fresh and burnt marijuana emanating from the
24 vehicle, and, particularly following Johnson's odd "effort" to search for the registration and
25 insurance information, Sergeant Simmont also had probable cause to believe the vehicle was
26 likely to contain evidence of marijuana possession and distribution, the same crimes for which
27 he already had probable cause to arrest Johnson.  This makes the search valid both subject to the
28 "automobile exception" and as a search incident to Johnson's arrest following probable cause

13

that he was committing marijuana-related offenses. Again, it is of no moment that Sergeant Simmont subjectively viewed Johnson's arrest as relating to the more pressing violation of being a felon in possession of body armor.

**CONCLUSION**

For the reasons stated above, defendant's motion to suppress is **DENIED**. A separate order addresses his motion to suppress the fruits of an unrelated warrant search of his home.

**IT IS SO ORDERED.**

Dated: December 20, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE